UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KHA'WANN LAMAR, <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL, et al., <br><br> Defendants. | CAUSE NO. 3:21-CV-399-JD-MGG |

OPINION AND ORDER

Kha'wann Lamar, a prisoner without a lawyer, was ordered to show cause why he has not paid the initial partial filing fee assessed by the court. Upon review of his response (ECF 7), the order to show cause is discharged. He is reminded that he remains obligated to pay the filing fee over time in accordance with 28 U.S.C. § 1915(b)(2).

The court proceeds to screen the complaint. (ECF 1.) Under 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Lamar is proceeding

without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Lamar is incarcerated at Indiana State Prison ("ISP"). He alleges that on April 29, 2021, he was extracted from his cell by members of "E-Sqad,"[1] some of whom were not wearing facial coverings. He states that they were coughing and sneezing in his "air space," which made him concerned that he could contract COVID-19. He states that he was then placed in the segregation unit but was not permitted to have a face mask or soap.[2] He claims that the lack of a mask caused him to become ill due to "plastic and Styrofoam fire smoke inhalation." Based on these events, he seeks compensatory and punitive damages from "E-Squad," Warden Ron Neal, and Assistant Warden Douglas Wardlow.

Prison officials who "expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights." *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011). Inmates also cannot be denied "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). However, "negligence, gross

---

[1] He does not explain what E-Squad is, but it appears to be a group of correctional officers who regularly perform cell extractions of inmates.

[2] He further claims that the conditions in the segregation unit were "extremely unsanitary," but he filed a separate lawsuit over the conditions of his confinement in the segregation unit. *See Lamar v. Neal*, 3:21-CV-403-DRL-MGG (N.D. Ind. filed June 4, 2021). He has also filed a separate lawsuit regarding his alleged need for a COVID-19 test and/or treatment by prison medical staff. *See Lamar v. Wexford*, 3:21-CV-248-JD-MGG (N.D. Ind. filed Apr. 8, 2021). He cannot use the in forma pauperis statute to file lawsuits with duplicative claims. *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (suit is "malicious" for purposes of 28 U.S.C. § 1915 if it is "intended to harass" or otherwise abusive of the judicial process); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (federal suit may be dismissed when it duplicates claims in another pending lawsuit). The court will presume that he did not intend to reassert these claims in this lawsuit and merely included some of the same information for background.

negligence, or even recklessness as the term is used in tort cases is not enough" to support an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Rather, to establish an Eighth Amendment violation, the defendant's "state of mind must rise to the level of deliberate indifference." *Id.* "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). The deliberate indifference standard imposes a "high hurdle," for it requires a showing "approaching total unconcern for the prisoner's welfare." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012).

Mr. Lamar has not alleged a plausible Eighth Amendment claim under these standards. While wearing a face covering may have been a best practice for members of the E-Squad, "the mere failure . . . to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002); *see also Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) ("A defendant with knowledge of a risk need not take perfect action or even reasonable action" to avoid Eighth Amendment liability). The fact that some officers may have violated prison policies or local health codes mandating face coverings also does not give rise to a constitutional claim. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws

or . . . departmental regulations"). He states that their actions caused him to worry that he might contract the disease, but that—unfortunately—is a fear currently shared by many individuals, both in and out of prison. *See Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wisc. Nov. 18, 2020) ("The plain fact is that the country is experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country. This does not mean that the correctional officers in charge of those prisons are subjecting inmates to cruel and unusual punishment. People, both inside and outside prisons and jails, are contracting COVID-19[.]"). His allegations do not give rise to a plausible Eighth Amendment claim.

He also claims that he was not allowed to have a face mask while in the segregation unit, but prison officials are entitled to substantial deference on matters that impact institutional safety and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Permitting an inmate to have an item that obscures a portion of his face poses obvious security implications, particularly in a restrictive housing unit. *See Lekas v. Briley*, 405 F.3d 602, 610 (7th Cir. 2005) (observing that inmates in segregation are permissibly subjected to far more restrictive conditions than those in general population, including a "drastic reduction in the number and nature of personal items that prisoners are allowed to have in their possession"). It is also not evident from his allegations why not allowing him a mask posed an undue risk to his safety, as it can be discerned that he was housed

4

alone in a cell during this period. Even if giving him a mask would have been a best safety practice, that is not the standard for establishing a constitutional violation. *Peate*, 294 F.3d 882.

Mr. Lamar also asserts that the lack of a face mask caused him problems for a reason unrelated to COVID-19, specifically, that he suffered smoke inhalation from "plastic and Styrofoam fire." He does not include any factual content to explain why there was a problem with smoke inhalation in the prison, how the events surrounding the fire (or fires) unfolded, or how many fires there have been and over what period. Merely "putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to [the plaintiff] that might be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

To the extent he is claiming that he is in need of medical care because of the smoke, it cannot be determined from his sparse allegations whether he has an objectively seriously medical need or whether any defendant acted with deliberate indifference to that medical need.[3] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although he is entitled to "reasonable measures to meet a substantial risk of serious harm," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional

---

[3] He attaches a grievance in which he asserts that he is suffering from "long haulers disease, PTSD, brain disease, and other illness" and asks for "compassionate release" from prison. (ECF 1-1 at 2.) He does not provide any detail about these conditions or explain what care he has received for them to date, nor has he provided any link between these conditions and smoke inhalation.

5

would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). Mr. Lamar does not provide detail about what his medical needs are, whether he has communicated this need to anyone at the prison, and/or how the treatment he has received to date has been inadequate. Without such detail, the court cannot conclude that he asserts a plausible constitutional claim.

Likewise, his allegation about the lack of soap could trigger Eighth Amendment concerns, as inmates are entitled to adequate hygiene materials. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). However, he does not describe in any detail how long he had to go without soap, and it is also not clear whether he is claiming that he was totally unable to clean himself during his period, or merely that he could not keep a bar of soap in his cell. Prison officials are generally permitted to regulate what items inmates have in their cells, particularly in a restrictive housing unit where security concerns are heightened. *See Lekas*, 405 F.3d at 610. Without more detail, the court cannot conclude that he has plausibly alleged the type of severe deprivation that would give rise to an Eighth Amendment violation.

In addition to these problems, the only defendants he names are "E-Squad," Warden Neal, and Assistant Warden Wardlow. "E-Squad" does not appear to be an identifiable "person" or policy-making body that can be held liable for a constitutional violation under 42 U.S.C. § 1983. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). As to the Warden and Assistant Warden, he does not describe how these high-ranking officials were personally involved in these events, if at all. Liability under 42 U.S.C. § 1983 is based on personal responsibility, and the Warden and Assistant

6

Warden cannot be held liable simply because they hold supervisory positions at the prison. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Supervisory prison officials can be held liable for a constitutional violation committed by a subordinate only if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). There is no plausible basis in the complaint to infer that the Warden and Assistant Warden knew about a constitutional violation committed by a subordinate employee, condoned or facilitated their actions, or otherwise turned a blind eye to Mr. Lamar's rights.

Therefore, the complaint does not state a claim upon which relief can be granted. In the interest of justice, the court will allow Mr. Lamar an opportunity to amend his complaint if, after reviewing the court's order, he believes that he can state a plausible constitutional claim against these defendants, consistent with the allegations he has already made under penalty of perjury. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018); *Luevano v. Wal-Mart*, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **November 19, 2021**, to file an amended complaint if he so chooses; and

(2) CAUTIONS him that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim upon which relief can be granted.

SO ORDERED on October 19, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT